| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT** <br> **SOUTHERN DISTRICT OF NEW YORK** | **FOR PUBLICATION** |

-------------------------------------------------------X
In re                                                                         :
                                                                                  :   Chapter 7
                                                                                  :
WATERFORD WEDGWOOD USA, INC.,    :
*et al.*                                                                    :   Case No. 09-12512 (SHL)
                                                                                  :
           Debtors.                                             :   (Jointly Administered)
                                                                                  :
-------------------------------------------------------X
JOHN S. PEREIRA, as Chapter 7 Trustee      :
for Waterford Wedgwood USA, Inc.,               :
                                                                                  :
           Plaintiff,                                              :   Adv. Proc. No. 14-02010 (SHL)
                                                                                  :
           v.                                                          :
                                                                                  :
EISNERAMPER LLP, as Successor to             :
Amper Politziner & Mattia, P.C.,                       :
                                                                                  :
           Defendant.                                           :
-------------------------------------------------------X

## MEMORANDUM OF DECISION

A P P E A R A N C E S:

TROUTMAN SANDERS LLP
*Counsel for the Chapter 7 Trustee for Waterford Wedgwood USA, Inc.*
405 Lexington Avenue
New York, New York 10174
   By:    John P. Campo, Esq.
            John S. Kinzey, Esq.

COLE SCHOTZ P.C.
*Counsel for EisnerAmper LLP*
900 Third Avenue, 16th Floor
New York, New York 10022
   By:    Michael D. Sirota, Esq.
            Daniel F.X. Geoghan, Esq.

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is a motion (the "Motion") by EisnerAmper, LLP (together with its predecessor, Amper, Politziner & Mattia, PC, "EisnerAmper" or the "Defendant"), seeking to dismiss the first two counts of the complaint (the "Complaint") filed by John S. Pereira, as Chapter 7 Trustee for Waterford Wedgwood USA, Inc.  Counts I and II allege that EisnerAmper committed malpractice in auditing the retirement plan of debtor Waterford Wedgwood USA, Inc. (the "Debtor") by underestimating the amount of required employer contributions.  EisnerAmper argues that the Chapter 7 Trustee lacks standing to pursue these claims because any injury occurred to the plan participants and the Debtor employer has never paid the missing funds to the retirement plan.  For the reasons set forth below, the Court agrees that the Chapter 7 Trustee lacks standing to bring these claims.

## BACKGROUND

As on any motion to dismiss, the Court assumes the allegations of the Complaint to be true.  The Debtor was part of an international enterprise that produced, marketed, and sold glassware, ceramics, and other consumer products under trade names, including "Waterford," "Wedgwood," and "Royal Doulton."  Compl. ¶ 7.  The Debtor focused those activities on the United States.  Compl. ¶ 7.  Although the Debtor operated for some years at a loss, an indirect-parent entity, Waterford Wedgwood PLC ("PLC"), provided sufficient funds to pay the Debtor's employees, vendors and other creditors.  Compl. ¶ 8.  The Debtor sponsored the retirement plan for the benefit of its employees (the "Retirement Plan") and was required to make annual employer contributions to the Retirement Plan.  Compl. ¶¶ 8-11.  But the Debtor failed each year to contribute the full amount it owed to the Retirement Plan.  Compl. ¶ 15.

2

Specifically, Section 5.2(b) of the Retirement Plan provided that the Debtor would annually contribute three percent of an eligible employee's annual "Compensation" to the Retirement Plan. Compl. ¶ 12. Section 2.11 of the Retirement Plan defined "Compensation" as "the total remuneration of all salary, wages, commissions, bonuses, and overtime pay . . . paid by [the Debtor to the eligible employee]." Compl. ¶ 13. From 2002 to 2009, however, the Debtor only contributed three percent of the employee's *base salary*, rather than three percent of the employee's "*Compensation*" as defined in Section 2.11 of the Retirement Plan. Compl. ¶ 15. Therefore, the Retirement Plan was underfunded in an amount equal to the difference between three percent of each eligible employee's total remuneration and three percent of each employee's base salary, plus lost earnings thereon. Compl. ¶ 15. The underfunding totaled at least $1,300,000. Compl. ¶ 28.

Because the Retirement Plan qualified as an "employee pension benefit plan" under the Employee Retirement Income Security Act, it had to file annual paperwork with the Department of Labor. Compl. ¶¶ 16-17. EisnerAmper, an accounting firm, was engaged to handle the annual paperwork for 2004 through 2007. Compl. ¶ 19; EisnerAmper Engagement Letters (Supp. Decl. of Daniel F. X. Geoghan, Exs. A-D) [ECF Nos. 14-1 to 14-4].[1] The Debtor relied on EisnerAmper to "conduct the audits" with "skill, thoroughness and accuracy," Compl. ¶ 21, but EisnerAmper never identified or alerted the Debtor to the underfunding. Compl. ¶ 23.

The Debtor filed a Chapter 7 petition in April 2009. In November 2009, the Chapter 7 Trustee obtained an order from the Court that appointed Robert Carroll as the "administrator and fiduciary for the" Retirement Plan, and also released the Chapter 7 Trustee from "any further obligations to administer . . . and manage the assets of the" Retirement Plan. *See Order*

---

[1] Unless otherwise specified, all references to the ECF docket are to Case Number 14-02010.

3

*Authorizing Robert T. Carrol to Serve as Administrator* (Decl. of Daniel F. X. Geoghan, Ex. E) [ECF No. 5-7]. Prior to April 2011, "Carroll discovered that there may be a deficiency in the [Retirement] Plan assets . . . . Because these shortfalls . . . occurred before Carroll's appointment," the Chapter 7 Trustee asserted that it was "appropriate to limit Carroll's liability as administrator and trustee." *See Motion Pursuant to Section 105(A) Limiting Liability of Robert T. Carroll as Administrator*, ¶ 12 (Decl. of Geoghan, Ex. F) [ECF No. 5-8]. In June 2011, the Court entered an order at the request of the Chapter 7 Trustee to insulate Carroll "from personal liability in connection with the administration and termination of the [Retirement Plan] prior to his appointment as administrator and trustee." *See Order Limiting Personal Liability of Carroll as Plan Administrator* (Decl. of Geoghan, Ex. G) [ECF No. 5-9].

The bar date for filing proofs of claim passed in January 2010. *See Notice of Last Date to File Claims* [Case No. 09-12512, ECF No. 36]. More than four years later, in April 2014, the Retirement Plan's administrator filed a proof of claim against the Debtor in the amount of $2,505,637, based on the underfunding of the Retirement Plan. *See* Proof of Claim No. 249 (Decl. of Geoghan, Ex. J) [ECF No. 5-12]. Less than one month later, the Chapter 7 Trustee filed this action. In Counts I and II, the Chapter 7 Trustee asserts that the Defendant was grossly negligent, reckless, or engaged in willful misconduct in auditing the Retirement Plan. The Chapter 7 Trustee seeks an award for injuries to the Debtor and its estate that resulted from the underfunding. Compl. ¶ 27.

In its Motion, the Defendant contends that the Chapter 7 Trustee lacks standing to bring Counts I and II because he has not alleged a personal injury. The Defendant alternatively seeks to dismiss Counts I and II for failing to satisfy a heightened pleading standard for alleging reckless and willful conduct by an auditor. The Chapter 7 Trustee opposes the Motion, arguing

4

that EisnerAmper's malpractice injured the Debtor as of the bankruptcy petition date by causing the Debtor to miss the opportunity to obtain money to pay the shortfall in the Retirement Plan, and by causing the Chapter 7 Trustee to incur additional costs and expenses on behalf of the Debtor.

## DISCUSSION

### I.   Legal Standards

#### A.   The Constitutional Requirement of Standing

A plaintiff bears the burden of establishing jurisdiction. *See Ali v. New York City Dep't of Transp.*, 2014 WL 5822625, at *1 (E.D.N.Y. Nov. 7, 2014) ("'The party invoking federal jurisdiction bears the burden of establishing' the court's jurisdiction.") (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). "An important component of the Article III jurisdictional limit of federal courts [in] deciding 'cases' or 'controversies' is standing." *Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 85 (2d Cir. 2006). "Standing is a threshold issue for this Court. If a plaintiff does not have standing, a court has no subject matter jurisdiction to hear the case." *McHale v. Citibank, N.A.* (*In re 1031 Tax Grp., LLC*), 420 B.R. 178, 191-92 (Bankr. S.D.N.Y. 2009) (citations omitted). "The burden to establish standing [is] with the party claiming that standing exists." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995) ("*Hirsch II*"). Standing may be properly challenged by a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). *Pyramid Crossgates Co.*, 436 F.3d. at 87-89 & n.6; *see also* Fed. R. Civ. Pro. 12(b)(1) ("[A] party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction . . . .").[2]

---

[2]   Federal Rule of Civil Procedure 12(b) is made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012(b).

The doctrine of standing is derived directly from the "case or controversy" requirement in Article III of the Constitution. *See Hirsch II*, 72 F.3d at 1091; U.S. Const. art. III, § 2, cl. 1. "It focuses upon the party seeking to invoke federal jurisdiction, rather than upon the justiciability of the issue at stake in the litigation." *Hirsch II*, 72 F.3d at 1091 (citation omitted). "To have standing, [a] plaintiff must [1] allege personal injury [2] fairly traceable to the defendant's allegedly unlawful conduct and [3] likely to be redressed by the requested relief." *Id.* (citation and quotations omitted). The personal injury must be "distinct and palpable," "concrete in nature and particularized to [the plaintiff]," and "not 'abstract,' 'conjectural,' or 'hypothetical.'" *Id.* (citations omitted). "As the multitude of standing cases indicates, however, these terms cannot be defined so as to make application of the constitutional standing requirement a mechanical exercise." *Id.* at 1091-92 (citation and quotations omitted). The Supreme Court recently clarified that "threatened injury must be certainly impending to constitute injury in fact, and . . . allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l, USA*, 133 S.Ct. 1138, 1147 (2013).

B.   **Standing of a Bankruptcy Trustee**

"A bankruptcy trustee stands in the shoes of the debtor and 'can only assert claims that the debtor could have asserted prior to filing for bankruptcy.'" *In re 1031 Tax Grp. LLC*, 420 B.R. at 193 (quoting *Wornick v. Gaffney*, 544 F.3d 486, 490 (2d Cir. 2008)); *see also Buchwald v. Renco Group, Inc. (In re Magnesium Corp. of Am.)*, 399 B.R. 722, 757 (Bankr. S.D.N.Y. 2009). "[W]hen creditors . . . have a claim for injury that is particularized as to them, they are exclusively entitled to pursue that claim, and the bankruptcy trustee is precluded from doing so." *Hirsch II*, 72 F.3d at 1093. "As a general matter, [therefore,] bankruptcy trustees do not have standing 'to sue third parties on behalf of the estate's creditor's but may only assert claims held

6

by the bankrupt corporation itself.'" *In re 1031 Tax Grp. LLC,* 420 B.R. at 193 (citing *Breeden v. Kirkpatrick & Lockhart LLP (In re Bennett Funding Grp., Inc.)*, 336 F.3d 94, 99-100 (2d Cir. 2003) (additional citations omitted)). This prevents the depletion of a debtor's assets from a trustee's attempt to enforce rights possessed by third parties. *See Mediators, Inc. v. Manney (In re Mediators, Inc.)*, 105 F.3d 822, 826 (2d Cir. 1997) (citation omitted). It also prevents defendants from facing the danger of duplicative recoveries. *See id.*

To decide whether an injury was to a corporation or its creditors, best practices suggest that a court may consider multiple factors, including:

> to whom any allegedly breached duty was owed; what was the injury underlying the claims; who suffered the injury; who would gain from the recovery, or lose out if the recovery were awarded to a different successful plaintiff; and, to the extent different from any of the foregoing, whether *any* creditor of the debtor could assert the claim . . . or just those creditors suffering a particularized injury.

*In re Magnesium Corp. of Am.*, 399 B.R. at 758.

## II. The Complaint Does Not Allege Sufficient Injury to Establish Standing

The Chapter 7 Trustee argues that it suffered three injuries from the Defendant's professional malpractice:

(1) the Debtor missed an opportunity to obtain funding from its indirect parent, PLC, to make the required employer contributions to the Retirement Plan;

(2) required employer contributions to the Retirement Plan went unpaid, and together, with lost earnings thereon, totaled not less than $1,300,000; and

(3) costs and expenses.

Opp'n at 4.[3] But none of these alleged injuries provide standing to the Trustee.

---

[3]   These three injuries are set forth in the Complaint, which provides:

> 27. WWUSA and its estate were injured by [Eisner]Amper's failure to advise it of the failure to make the full required annual employer contribution. If, at any time prior to PLC's insolvency, WWUSA's management had been aware that these required employer contributions to the [Retirement] Plan had not been

7

The Chapter 7 Trustee's first argument fails because there is no explanation as to how the Debtor was injured by missing an opportunity to obtain funds from PLC to provide to the Retirement Plan. *See Hirsch II*, 72 F.3d at 1091 (injury must be "concrete" and not "conjectural"); *see also Hirsch v. Arthur Andersen & Co.*, 178 B.R. 40, 43 (D. Conn. 1994) ("*Hirsch I*") ("[T]he trustee must do more than simply allege damage to the debtors; the facts alleged . . . must support this allegation. If the facts . . . suggest that the claims actually belong to the creditors, a blanket allegation of damage to the debtors will not confer standing . . . ."), *aff'd on other grounds*, 72 F.3d at 1094. Indeed, it is hard to see how the Debtor would have been harmed by a failure to receive $1.3 million where that $1.3 million simply would have been turned over to another party—here the Retirement Plan. *See Am. Tissue, Inc. v. Donaldson (In re Am. Tissue, Inc.)*, 351 F. Supp. 2d 79, 93 n.14 (S.D.N.Y. 2004) (quantifying alleged injury to the debtor). The Chapter 7 Trustee does not allege any distinct benefit to the Debtor if it had obtained funding from PLC; missing out on this so-called "opportunity," therefore, did not cause the Debtor to be any worse off. *See Hirsch I*, 178 B.R. at 43 ("[T]he trustee has not alleged any distinct way in which the debtors were injured by the asserted wrongdoing of the defendants."); *Hirsch II*, 72 F.3d at 1091.[4]

---

> made in full, WWUSA could and would have obtained funding from PLC to pay the shortfall in the employer contribution, pursuant to the support arrangements described above. However, once PLC had been placed in receivership, WWUSA had no ability to make these payments to the Plan, subjecting its estate to actual and potential claims by the [Retirement] Plan and its participants, as well as to potential regulatory sanctions by the Internal Revenue Service.
>
> 28.    Upon information and belief, the required employer contributions to the [Retirement] Plan that went unpaid based on [Eisner]Amper's failure to discover them, together with the lost earnings thereon, totaled not less than $1,300,000, and may be significantly higher. Moreover, as a result of [Eisner]Amper's failures, the Trustee, on behalf of WWUSA, has incurred additional costs and expenses.

Compl. ¶¶ 27-28.

[4]    The Defendant challenges the plausibility of the Chapter 7 Trustee's assertion that PLC could have and would have paid the Retirement Plan shortfall. Given PLC's receivership in January 2009, the financial ability of

8

The Chapter 7 Trustee's second argument suffers from a similar defect. While the $1.3 million allegedly should have been paid to the Retirement Plan, the Debtor has actually paid nothing. *See Hirsch I*, 178 B.R. at 44 (Where "[i]t appears from the complaint that the only ones injured by the defendants' conduct . . . were the creditors[,] [t]he trustee cannot circumvent the standing requirement simply by imputing this injury to the debtor."); *Id*. at 43 ("Recognizing that he cannot assert claims against the defendants on behalf of the creditors, the trustee alleges damages to the debtors, to the extent of the unpaid obligations of the debtors to the creditors."). In fact, the Debtor appears to have benefitted from not paying the required Retirement Plan contributions by gaining the use of funds that should have been in the Retirement Plan's possession. *See Am. Tissue*, 351 F. Supp. 2d at 93-94 (debtor could not characterize its monetary gain as injury). As the funding shortfall was not paid by Debtor prior to the bankruptcy, Compl. ¶ 27, the only way the Chapter 7 Trustee could allege a constitutional injury would be if the bankruptcy estate paid any of the shortfall. But there is no allegation that any such claim was paid by the bankruptcy estate. While a claim was filed by the Plan Administrator for the shortfall, Proof of Claim No. 249, the Chapter 7 Trustee does not rely on that claim for its standing.[5] *See* Opp'n at 2 ("These claims of the estate existed at the time of [Debtor's] bankruptcy filing and are not dependent on the filing of a proof of claim by the Plan . . . as Defendant incorrectly assumes."); Hr'g Tr. 37:6-12 (Oct. 2, 2014) [ECF No. 15] ("[S]tanding

---

PLC to make such a payment is less than assured. Moreover, the Chapter 7 Trustee does not explain the plausibility of such a payment based on PLC's prior contributions or course of dealing between the two parties. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level . . . .") (citation omitted). But given the Court's conclusions above on standing, it does not need to decide whether the Trustee has made a plausible allegation as to PLC's funding of this obligation.

[5]    There is no allegation that any employee has filed a claim against the Debtor for the shortfall in the Retirement Plan.

9

existed or didn't exist at the time of the filing of the petition. It has nothing to do with whether the claim was filed . . . .").[6]

In any event, it is unclear how the claim could be paid. The Plan Administrator's proof of claim was untimely, as it was filed more than four years after the bar date and almost three years after Carroll sought an order to limit his liability because he believed the Retirement Plan was underfunded. *See Motion Pursuant to Section 105(A) Limiting Liability of Robert T. Carroll as Administrator* (Decl. of Geoghan, Ex. F). It would appear, therefore, that any such claim would only be paid after all the other general unsecured claims in the case were satisfied. *See, e.g., Am. Intern. Grp., Inc. v. Bank of Am. Corp.*, 2011 WL 6778473 (S.D.N.Y. Dec. 20, 2011) ("[U]ntimely claims . . . may be paid after all timely, unsecured debtors' claims are satisfied.") (citing 11 U.S.C. § 726(a)(3)); *cf. In re DV8, Inc.* 435 B.R. 738, 741 n.1 (Bankr. S.D. Fla. 2010) (excusable neglect standard of Rule 9006(b)(1) inapplicable in Chapter 7 case) (citing *Pioneer Servs. Co. v. Brunswick Assocs. Ltd. P'ship.*, 507 U.S. 380, 389 (1993)). But the unsecured creditors here are not being paid in full. *See, e.g., Chapter 7 Trustee's Fifth Interim Report* ¶ 11 [Case No. 09-12512, ECF No. 531] ("I anticipate that additional recoveries will become available to pay . . . a further distribution to general unsecured creditors, who . . . will have received to date [Nov. 19, 2014] seven and a half percent total distribution on their claims."). Thus, no money would be available for the Trustee to pay the Plan Administrator's late claim.

The second injury claimed by the Trustee also alleges "lost earnings" on the unpaid contribution. But the Trustee does not plausibly allege what such lost earnings are and how they

---

[6] The Chapter 7 Trustee's position is not surprising, as such a claim could not properly serve as a basis for the Chapter 7 Trustee's standing. *See In re Magnesium Corp. of Am.*, 399 B.R. at 758 ("Trustee, as an estate representative, standing in the Debtors shoes, has standing to bring only those actions the Debtors could have commenced if not for the bankruptcy filing.") (citing *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir. 2003)).

10

would have been earned by the Debtor. For example, it is unclear whether these lost earnings would have been earned by the Retirement Plan, a logical conclusion given that the $1.3 million in contributions would have been paid to the Retirement Plan in the first place. But to the extent the Debtor might have earned income while holding these funds before paying them over to the Retirement Plan, the Trustee has not made such allegations. *See Hirsch I*, 178 B.R. at 43 (facts alleged must support allegation of damage to debtor). Such allegations would presumably need to explain the timing involved in any transfer of funds so as to plausibly state a claim as to how the Debtor was damaged. *See Iqbal*, 556 U.S. at 678 (requiring allegation of enough facts to state claim plausible on its face).

The Chapter 7 Trustee also fails to plausibly allege the third injury, which takes the form of "additional costs and expenses" incurred by the Chapter 7 Trustee "on behalf of" the Debtor. Compl. ¶ 28. Other than using the term "additional costs and expenses," the Complaint is devoid of any allegations regarding their basis or amount. *See Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (Plaintiff must allege "enough facts to state a claim for relief that is plausible on its face.") (citing *Iqbal*, 556 U.S. at 678).[7]

In addition to these three alleged injuries, the Chapter 7 Trustee also contends that it has standing to bring the professional malpractice claims against the Defendant because those claims "belong" to the Debtor as property of the estate under Section 541 of the Bankruptcy Code. Opp'n at 8. Section 541(a) provides that the "estate is comprised of . . . all legal or equitable interests of the debtor in property as of the commencement of the case. 11 U.S.C. § 541(a)(1).

---

[7] The Complaint also alleges the injury of potential regulatory sanctions by the Internal Revenue Service but does not specify any action actually taken by the IRS against the Debtor or the Chapter 7 Trustee. *See Clapper*, 133 S. Ct. at 1147 (allegations of possible future injury are insufficient for constitutional standing); Compl. ¶ 27. In any event, the Plaintiff now does not claim standing on the basis of "any 'potential claims' of third parties." Opp'n at 6. Accordingly, the Court need not address this issue.

11

"Every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative is within the reach of [Section] 541." *See Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008). This includes "causes of action possessed by the debtor at the time of filing." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 484 (2d Cir. 2014). But while a "claim" could be "property of the estate" pursuant to Section 541(a), a debtor may not bring such a claim unless it has standing.

## CONCLUSION

For the reasons stated above, the Court finds that the Chapter 7 Trustee lacks standing to pursue Counts I and II of the Complaint. The Defendant's Motion is therefore granted and Counts I and II are dismissed.[8] The Defendant should settle an order on three days' notice.

Dated: New York, New York
April 17, 2015

                                      */s/ Sean H. Lane*
                                      UNITED STATES BANKRUPTCY JUDGE

---

[8] Because the Court agrees that the Chapter 7 Trustee lacks standing to pursue Counts I and II, the Court will not address the Defendant's arguments regarding other defenses under Federal Rule of Civil Procedure 12(b)(6). *See In re UBS ERISA Litig.*, 2014 WL 4812387, at *3 (S.D.N.Y. Sept. 29, 2014) ("[B]ecause the Court concludes that [the] Plaintiff lacks standing, the Court need not, and in fact may not, address Defendants' Rule 12(b)(6) arguments.") (citations omitted).